This is an appeal of two cases from the Pickaway County Court of Common Pleas which have been consolidated by this court. Plaintiff-Appellant AG Services sued Defendant-Appellees Keynes Bros. and Albert Louer, et al., to recover money which Keynes paid to the Louers for certain crops sold to Keynes. Ag Services claimed that it had a security interest in the crops and was entitled to the proceeds of the sale. All parties filed motions for summary judgment and the trial court granted summary judgment in favor of Keynes and the Louers. From that decision, Ag Services took two appeals which have been consolidated for purposes of decision in this matter. Ag Services designates identical claims of error in each case.
ASSIGNMENT OF ERROR 1
 "THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT."
 ASSIGNMENT OF ERROR 2
 "THE TRIAL COURT ERRED AS A MATTER OF LAW IN FAILING TO GRANT PLAINTIFF-APPELLANT'S MOTION FOR SUMMARY JUDGMENT."
FACTS
Ag Services provided financing to Douglas and Jahne Palmer dba Walston Hill Farms for the 1992 crop year. The Palmers executed a promissory note in the amount of $300,000.00 in favor of Ag Services. They also delivered to Ag Services a security agreement as collateral for the note which granted Ag Services a security interest in the crops to be grown. Ag Services recorded a Financing Statement, as required by R.C.1309.21 to perfect a security interest, listing the collateral on the property and the record owners of the property as Walston Hill Farms, Lewis Wm. Dye, ERA Partnership, Thomas Andrew Kirdas, and Curtis Scott. Ag Services provided Keynes with a Notice of Security Interest. However, the description of the real estate, in both the Security Agreement and Financing Statement, were not accurate and not sufficient to indicate the actual land on which the crops were growing or to be grown. In addition, the Financing Statement failed to list the proper owners of record, the Louers.
Walston and the Palmers delivered crops to Keynes over the 1992 growing year. Some crops were identified as coming from the real estate in which Ag Service had a security interest and accordingly Keynes issued a check jointly to Walston and Ag Services for the crops. Other crops were taken to Keynes by Palmer and identified as being sold for the "Bennett Farm Trust". Keynes then issued a check solely to the Bennett Farm Trust. A check issued to the Bennett Farm in February 1993 in the amount of $28,600. was cashed by the Louers, the owners of record of the Bennett Farm.
STANDARD OF REVIEW
Summary judgment is appropriate when the following have been established: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in their favor. Civ.R. 56(C); Bostic v. Connor (1988), 37 Ohio St.3d 144,146. The burden of showing that no genuine issue exists as to any material fact falls upon the party moving for summary judgment. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115. Additionally, a motion for summary judgment forces the non-moving party to produce evidence on any issue for which that party bears the burden of production at trial. Wing v.Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108
In reviewing a summary judgment, the lower court and the appellate court utilize the same standard, but we do not give deference to the trial court, i.e., we review the judgment independently and without deference to the trial court's determination. Midwest Specialties, Inc. v. Firestone Tire Rubber Co. (1988), 42 Ohio App.3d 6, 8. When reviewing an order for summary judgment, our review is de novo in nature and we apply the same standard as the trial court. See Tohline v.Central Trust Co., N.A. (1988), 48 Ohio App.3d 280, 281; Howardv. Wills (Sept. 11, 1991), Jackson App. No. 641, unreported. In essence, we examine the materials before us and determine whether summary judgment is appropriate under the standards set out in Bostic, Harless, Mitseff and Wing, supra.
Appellant asserts three basic claims in support of its assignments of error. The first is that: "Ag Services of America, Inc. had a priority in the proceeds regardless of whether Ag Services interest was perfected." The same claim is put another way: "Ag Services had a priority in the proceeds over Keynes because Keynes took possession of the collateral after it had been harvested." Ag Services claims that it had a security interest in the crop and thus a priority. This contention was made and rejected in Western Ohio Natl. Bank Trust Co. v. Continental Grain Co. (1986), 33 Ohio App.3d 210. In that case, while noting that a lender may obtain a security interest in a harvested crop,
 "* * * we conclude that the real estate descriptions required of the security agreement by R.C. 1309.14 and of the financing statement by R.C. 1309.39 are essential to security agreements made and financing statements filed when the crops are still growing or to be grown, if these security agreements and financing statements are to accomplish the attachment and perfection of the lender's intended security interest in the harvested crop."
 "To conclude otherwise would relegate the real estate description requirements of R.C. 1309.14
and 1309.39 to situations which, in reality, do not exist." ***
 "While it may be true that these lenders attempted to take a security interest in a growing crop, the sales of crops which gave rise to the litigation in these cases occurred after harvest. Yet, without exception, the lender with the inadequate real estate description in its security agreement and financing statement lost." (citations omitted)
Appellant's second claim is: "The real estate description in the Security Agreement, Financing Statement and Notice of Security interest is sufficient to perfect Ag Services' security interest." Clearly it was not. The Louers were record owners of the land but were not listed as such, and as was noted by the trial court, appellant did not even contest this fact on summary judgment. R.C. 1309.39(D) (UCC 9-402) states in relevant part:
 "A financing statement covering crops growing or to be grown * * * must show that it covers this type of collateral, must recite that it is to be indexed in the real estate records of the county in which the real estate is situated, and the financing statement must contain a description of the real estate sufficient if it were contained in a mortgage of the real estate to give constructive notice of the mortgage under the law of this state. If the debtor does not have an interest of record in the real estate, the financing statement must show the name of a record owner or record lessee."
Appellant's third claim is: "Ag Services security interest in the proceeds was perfected as to Keynes Bros. and the Louers since neither the Louers nor Keynes Bros. Relied upon the alleged deficiencies in the property description." This argument seems to confuse the respective duties of the parties. Ag Services contends that Keynes and the Louers had knowledge of Ag Services' interest although it is clear from the record they did not. Ag Services then asserts that Keynes did not examine the property description or investigate who the record owners were, i.e. Keynes would have had knowledge if they had checked the inadequate description.
There is no such requirement in Chapter 13 of the Revised Code. The sections within that chapter set out with great specificity the things that must be done in order to perfect a security interest. There is only one right way of doing things. There are probably dozens or even hundreds of ways of doing things so that there may or may not be a perfected interest. If the courts permit deviation from the statutory requirements there will no doubt be dozens or even hundreds of cases where the courts will be called upon to decide if this particular form of non-compliance is good enough. From a public policy standpoint it is far better to insist on compliance so that lenders may know exactly what must be done to protect their interest in collateral and do it.
We adopt that position in this case. A security agreement and financing statement for growing crops or crops to be grown must contain a description of the real estate that complies with R.C. 1309.39(D) or the lender has no perfected interest. Anything less is not enough.
We note here the language of 1309.39(H), now (G), which provides, "A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading." Appellant would have us rule that omitting an accurate real estate description is a minor error. In Steego Auto Parts Corp.v. Markey (1981), 2 Ohio App.3d 200, where BancOhio became the successor in interest to Peoples Savings Bank, it was held that the mere change of name of the bank was a minor defect since the filing put a party on notice that a secured party had an interest in the collateral. In Mauer v. Port Feed Mill, Inc.
(1991), 71 Ohio App.3d 200, on the other hand, where the financing statement listed only the name of the person, Tom Davis, and did not identify the business, Port Feed Mill, and was not indexed under the name of Port Feed Mill, it was held that the interest was not perfected. In this case, the failure to include a proper description of the real estate cannot be regarded as minor.
Based on the foregoing, we find that the court did not err in granting summary judgment in favor of either the Louers or Keynes Bros. Appellant's assignments of error are not well taken and are overruled.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellees recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pickaway County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. Kline, J.: Concur in Judgment Opinion
For the Court
 BY: ----------------------- Lawrence Grey, Judge
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.
Judge Lawrence Grey, retired, of the Fourth District Court of Appeals, sitting by assignment of the Ohio Supreme Court in the Fourth District.